UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/15/15
```

CHENG CHUNG LIANG, TEH KUI SUN,
and FU HSIUNG CHEN,

Plaintiffs,

v.

J.C. BROADWAY RESTAURANT, INC.,
et al.,

Defendants.

12 Civ. 1054

**OPINION**

This is a wage-and-hour action originally brought by three restaurant chefs against their employers. Cheng Chung Liang, Teh Kui Sun, and Fu Shiung Chen allege on behalf of themselves and others similarly situated that defendants failed to pay overtime rates, failed to pay a minimum wage, and failed to pay all required wage premiums. The claims in the complaint fall under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, N.Y. Lab. Law §§ 650, and NYCRR § 137-1.7.

The claims of Sun and Chen have since been dismissed, leaving Liang as the sole named plaintiff in the case. It is not disputed that Liang's claims exclusively concern defendants' alleged failure to pay overtime rates.

1

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. They argue that that Liang was subject to the FLSA's exemption for executive employees, and that his overtime claims must fail.

The motion is denied.

## Factual Background

Liang worked for defendant Empire Szechuan, a Manhattan restaurant, from October 2009 through November 2011. (Compl. at ¶ 6.)

Liang was hired as a cook, but in January 2010 he was awarded a raise and given certain additional responsibilities. (Liang Tr. at 50-65.) The new responsibilities included ordering supplies for the kitchen and recruiting and selecting new cooks. (Id.) They also included preparing sauces, instructing other cooks in the proper execution of recipes, and directing other cooks to re-cook dishes when customers sent them back. (Id. at 58, 67-68, 74-76.) Concurrently, Liang's pay increased from $2,600 per month to $3,500 per month. (Id. at 60.) The four other cooks in the kitchen continued to make $2,600 per month. (Id.)

Liang attests that the restaurant owners paid him more than the other cooks because he was harder-working and more able, not because he was in a management position. (Id. at 60-63.) He further explains

2

that there was almost always an owner or "boss" in the restaurant, and that matters of employee discipline, scheduling, and compensation were handled exclusively by these persons, not by Liang. (Id. at 65-69, 76-77.)

## The Motion for Summary Judgment

The motion before the court is straightforward.   Defendants contend that the evidentiary record reveals that Liang's claims must fail because he was employed at defendants' restaurants in an executive position—namely, a "head chef"—rendering him exempt from the overtime requirements of the FLSA.   Liang counters that the record reveals no such thing, and opposes summary judgment.

### A.   Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).   An issue as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1987).   In demonstrating the existence of a genuine issue of material fact, the nonmoving party may not rest upon mere allegations or conclusory statements, but must go

beyond the pleadings with proper documentary evidence. See Davis v. New York, 326 F.3d 93, 100 (2d. Cir. 2002).

B. Executive Exemption

The FLSA's overtime pay provision does not apply to "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). Whether an individual employee falls within that exemption is a mixed question of law and fact that depends upon the actual job characteristics and duties of the employee. See Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010) (citing Holzapfel v. Town of Newburgh, 145 F.3d 516, 521 (2d Cir.1998)). The employer bears the burden of establishing that the employee falls within the exemption. See Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974). Because inquiries into employees' FLSA-exempt status are fact-intensive, "[e]ven where there has been full discovery, courts are often reluctant to grant summary judgment based on [an FLSA] exemption." Indergit v. Rite Aid Corp., Nos. 08 Civ. 9361 (PGG), 08 Civ. 11364 (PGG), 2010 WL 1327242, at *7 (S.D.N.Y. Mar. 31, 2010).

Courts have deferred to the Department of Labor's regulations defining the FLSA's executive exemption. See, e.g., Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 560-61 (2d Cir. 2012). The

4

Department of Labor classifies employees as "executive" if 1) they are "[c]ompensated on a salary basis"; 2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; 3) they "customarily and regularly direct[ ] the work of two or more other employees"; and 4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)(1)–(4).

Defendants contend that after January 2010, Liang was the head chef at the restaurant and an executive employee. They point to numerous statements Liang made in his deposition that tend to show he met some criteria for the executive exemption. For example, Liang was the only kitchen employee responsible for ordering ingredients. (Liang Tr. at 59.) Liang was paid $3,500 per month, which is equivalent to a salary of $42,000 per year. (Id. at 60.) This made him the highest-paid member of the kitchen staff, which also included four other cooks, and several persons performing auxiliary work such as washing and cutting. (Id. at 60-63.) Liang admitted that he provided some instruction and direction to other cooks with regards to executing recipes and responding to customer preferences and complaints, and that he was sometimes the

5

highest-ranking person in the kitchen. (Id. at 58, 67-68, 74-76.) Furthermore, Liang stated that he had a role in hiring two or three cooks. (Id. at 64-65.)

Liang disputes defendants' claim that he was a head chef, and describes his role as that of a cook. He asserts that, while he played a significant role in recruiting or hiring several cooks, he did not make the ultimate decision to hire them and he had no authority in setting other employees' schedules, disciplining them, or firing them. (Liang Tr. at 69; Liang Aff. at ¶ 7.) He contends that the vast majority of his time was spent cooking, and that management was not his "primary duty." (Id. at ¶¶ 7, 8.)

The second prong of the Department of Labor's test for the executive exemption is particularly important here. An employee falls within the executive exemption only if managerial work was the employee's "primary duty." The Department of Labor has made clear that factual details are indispensable in identifying an employee's primary duty:

> "[A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing

nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement."

29 C.F.R. § 541.700(c).

In this case, numerous unresolved issues of fact bear upon whether managerial work constituted Liang's primary duty. It is clear that he discharged some special responsibilities and received greater pay than the other cooks. And Liang admits, in his deposition and his affidavit, that he spent at least a small portion of his time assisting or directing other employees. But there is no definitive evidence concerning how much time Liang spent cooking versus assisting other employees, or the extent to which he performed his job under strict supervision.

Under these circumstances, the court must find that there are genuine issues of material fact concerning whether Liang's "primary duty" was management of the kitchen.

## Conclusion

The motion for summary judgment is denied. This resolves the motion listed as number 70 in this case, 12 Civ. 1054.

So ordered.

Dated: New York, New York
        September 15, 2015

Thomas P. Griesa
United States District Judge